UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff

-against-

JACOB "KOBI" ALEXANDER,
DAVID KREINBERG, and
WILLIAM F. SORIN,

Defendants.
------------------------------------------------------------X

MEMORANDUM & ORDER

06-CV-3844 (NGG)(RER)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Securities and Exchange Commission ("Commission") commenced this action against former executives of Comverse Technology, Inc. ("Comverse") for violations of the federal securities laws. (See Complaint (Docket Entry # 1).) In response, the former general counsel of Comverse, Defendant William F. Sorin, filed a "Consent" with the court, in which he, inter alia, admitted the court's jurisdiction and consented to the entry of a final judgment against him. (See Consent of Defendant William F. Sorin (Docket Entry # 20).) On January 19, 2007, the court entered final judgment against Sorin ("Final Judgment"), which, inter alia, barred him from violating federal securities law and ordered him to pay a fine and to disgorge profits. (See Final Judgment as to Defendant William F. Sorin (Docket Entry # 23).)

Sorin subsequently sought to vacate the Final Judgment and the court ordered a briefing schedule for this motion. (See Docket Entry # 74.) In the midst of briefing, Sorin sought leave to file a motion for limited discovery in aid of his motion to vacate. (See Docket Entry # 79.)

1

That motion for limited discovery is now pending before the court. For the reasons that follow, the motion is DENIED.

I.  **BACKGROUND**

As mentioned, Sorin filed with the court a Consent in which he admitted the court's jurisdiction and consented to the entry of Final Judgment against him. (See Consent.) According to its terms, the Consent was intended to resolve "only the claims asserted against [Sorin] in this civil proceeding." (Id. ¶ 11 (citing 17 C.F.R. § 202.5(f)).) The Consent acknowledged that "no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability." (Id.) Similarly, Sorin represented in the Consent that he "enter[ed] into this Consent voluntarily" and specifically stated "that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce [Sorin] to enter into this Consent." (Id. ¶ 7.) By court order, the Consent was incorporated into the terms of the Final Judgment entered against Sorin. (See Final Judgment ¶ 10.)

Besides these civil proceedings commenced against him by the Commission, Sorin also faced criminal charges for securities violations based on his conduct at Comverse. See United States v. Sorin, No. 06-cr-0723(NGG)(RER) (E.D.N.Y.). On November 2, 2006, Sorin entered into a Plea Agreement with the United States Attorney's Office for the Eastern District of New York (the "U.S. Attorney's Office" or the "Office") in connection with those criminal charges. (See Declaration of Thomas P. Puccio dated September 3, 2008 ("Puccio Decl."), Ex. 3-A ("Plea

Agreement").)[1] Pursuant to the Plea Agreement, Sorin agreed to waive indictment and to plead guilty to a one-count information, charging him with violating 18 U.S.C. § 371. (Id. ¶ 1.) The Plea Agreement informed Sorin of the statutory maximum penalty of five years imprisonment. (Id.) It also set forth a Guidelines estimate, but stated that the estimate was not binding on the Office, the U.S. Probation Department or this court. (Id. ¶¶ 2-3.) The Plea Agreement stated that it did "not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving [Sorin]." (Id. ¶ 6.) Finally, the Plea Agreement specifically stated that:

> No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all prior promises, agreements or conditions between the parties.

(Id. ¶ 7.)

Although the Consent in this action and the Plea Agreement in Sorin's criminal case are two separate documents, Sorin argues that they were actually part of a larger agreement with the "Government." He argues that this larger agreement included an unwritten promise that induced him to plead guilty in his criminal case and to consent to judgment in his civil case. (See Defendant Sorin's Memorandum of Law (Docket Entry # 84) ("Def. Mem.") 1.) As part of that overall agreement, Sorin contends, the "Government committed itself not to object to Mr. Sorin's request for a non-custodial sentence, a commitment that was abandoned just days before the scheduled sentencing of Mr. Sorin." (Id.)

This promise, according to Sorin, was made by the Assistant U.S. Attorney ("AUSA") prosecuting his case during the course of negotiations over the Plea Agreement. (Id. at 2-3.)

---

[1] The Puccio Declaration appears as an exhibit to a subsequent declaration filed with Defendant Sorin's Reply Memorandum on February 17, 2009 (Docket Entry # 88).

3

Sorin argues that this promise was integral to his decision to plead guilty, as well as to his decision to enter the Consent in the instant action filed by the Commission. (Id. at 3, 6-7.) Sorin argues that the promise was broken when the AUSA opposed a non-custodial sentence during Sorin's sentencing proceedings. (Id. at 3.) He argues that the breach of this promise should allow him to vacate the Final Judgment in this case. (Id. at 1-4.)

In the instant motion, Sorin seeks discovery from his trial counsel and from the Commission concerning the negotiations giving rise to the Plea Agreement. (Id. at 6-10.)

## II. DISCUSSION

The court concludes that discovery is not appropriate in this action and that Sorin's motion should be denied. The Consent forming the basis of the Final Judgment which Sorin seeks to vacate states, by its explicit terms, that it was intended to resolve <u>only</u> the claims at issue in this civil proceeding, and that <u>no promises</u> had been made by Plaintiff in this action to induce Sorin to sign it. (See Consent ¶¶ 7, 11.) Sorin's representations in the Consent are clear and unambiguous, and no discovery is needed to clarify the meaning of its terms with evidence of other promises. See New York ex rel. Spitzer v. Saint Francis Hosp., 289 F. Supp. 2d 378, 384 (S.D.N.Y. 2003) ("[T]he scope of a consent judgment must be ascertained within its four corners."). These clear terms of the Consent and Final Judgment are sufficient in themselves to deny Sorin's motion.

Nevertheless, even were the court to look to evidence of other promises to interpret the meaning of the Consent, the discovery requested by Sorin would not fall within the scope of that inquiry. Sorin seeks discovery relating to a promise allegedly made by the U.S. Attorney's Office regarding his criminal case. This alleged promise was made by a party in a separate proceeding, and does not bear on the meaning of the Consent entered by Sorin in this case.

4

Although it appears that negotiations concerning the settlement of each action occurred in tandem (see Puccio Decl., Ex. 6 (Declaration of Ilene Jaroslaw), at ¶¶ 4-5, 9), the documents settling each case unambiguously state that each was settled separately. Each document contains specific language indicating that it relates only to the proceeding in which it was entered, and not to any other proceeding. See Consent ¶ 11 (stating that Consent was only intended to address "the claims asserted against [Sorin] in this civil proceeding"); Plea Agreement ¶ 6 (stating the Plea Agreement does "not bind any federal, state, or local prosecuting authority other than the Office"). There is no need, therefore, to consider evidence relating to the Plea Agreement to help interpret the terms of the Consent.

Even were the court to consider the Plea Agreement as part of an overall agreement that induced Sorin to file the Consent, it need not entertain discovery relating to that agreement. The Plea Agreement, by its explicit terms, states that:

> No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. This agreement supersedes all prior promises, agreements or conditions between the parties.

(Plea Agreement ¶ 7.) This language makes clear that no additional promises induced Sorin to plead guilty, and that any prior promises had been superseded. See United States v. Lenoci, 377 F.3d 246, 258 (2d Cir. 2004) ("Where – as here – the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach.") (quoting In re Altro, 180 F.3d 372, 376 (2d Cir. 1999)). Accordingly, even were the Plea Agreement part of an overall agreement, the component relating to his guilty plea was entirely memorialized in the Plea Agreement itself.

5

The court's colloquy with Sorin on the day of his plea supports the conclusion that that no additional promises were part of Sorin's agreement to plead guilty. On two separate occasions, the court asked Sorin whether any promise, other than what was in the Plea Agreement, had induced him to plead guilty. He twice responded in the negative:

> THE COURT: I have in front of me a plea agreement in the United States of America against William F. Sorin. It's marked as Court's Exhibit No. 1. It is dated today, November 2, 2006, and it consists of six pages. I am going to hand it to the defendant and his attorney and ask you questions.
>
> Mr. Sorin, have you read this agreement?
>
> THE DEFENDANT: I have, Your Honor.
>
> THE COURT: Have you discussed it with your attorneys?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have they answered any and all questions that you had about this agreement?
>
> THE DEFENDANT: They have.
>
> THE COURT: Do you understand your rights and obligations under this agreement?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: Counsel, in your view, does the client understand his rights and obligation under this agreement?
>
> [COUNSEL]: Yes, he does, Your Honor.
>
> THE COURT: Please turn to page 6. On page 6 of the agreement, is that your signature by your name?
>
> THE DEFENDANT: It is, Your Honor.
>
> THE COURT: Did you sign the agreement today?
>
> THE DEFENDANT: I did, sir.
>
> THE COURT: And it's also signed by defense counsel, is it not?
>
> THE DEFENDANT: Yes, it is.

6

| | |
|---|---|
| THE COURT: | And the government has also executed the agreement; is that so? |
| [AUSA]: | That is correct, Your Honor. |
| THE COURT: | And your supervisor as well? |
| [AUSA]: | Yes. |
| THE COURT: | All right. Please return the agreement. |
| | <u>Mr. Sorin, I have to ask you a very important question: Is there any other agreement that has been made to get you to plead guilty that is not contained in this plea agreement?</u> |
| THE DEFENDANT: | <u>No, Your Honor.</u> |

(Puccio Decl., Ex. 3-B ("Transcript"), at 13-14 (emphasis added).) And later, the following colloquy took place:

| | |
|---|---|
| THE COURT: | Other than the agreement with the government, has anyone made you any promise to cause you to plead guilty? |
| THE DEFENDANT: | No, Your Honor. |

(Id. at 20.) During these proceedings, Sorin never indicated to the court that a promise outside the Plea Agreement had induced him to plead guilty. Thus, there is no reason to consider extrinsic evidence concerning Sorin's agreement with the U.S. Attorney's Office. Sorin's representations to the court make clear that their agreement was embodied completely in the Plea Agreement.

Finally, even to the extent that extrinsic evidence might be relied upon concerning the agreement Sorin had with the U.S. Attorney's Office, no further discovery would be required. Affidavits from the parties make clear that, besides the Plea Agreement, there was no promise made to Sorin with respect to his sentencing. AUSA Ilene Jaroslaw submitted a sworn declaration to the court stating:

> 10. There were no agreements made between me and [defense counsel] Mr. Brochin or Mr. Shechtman that were not contained in the executed, written plea

7

agreement. At no time during or prior to the taking of the guilty plea did I ever make any promise to Mr. Brochin or Mr. Shecthman – or anyone else – regarding the sentence Mr. Sorin would or should receive, nor did I make any promises to recommend any particular sentence. I never promised to remain silent. I certainly never promised to recommend probation, nor did I promise not to oppose probation.

(Puccio Decl., Ex. 6 (Declaration of Ilene Jaroslaw), at ¶ 10.)[2] The declaration of Sorin's defense attorney confirms this understanding of what occurred:

> 22. . . . I am absolutely confident that the government never made a promise or binding agreement that limited the position it could take at sentencing and I do not believe I ever said anything from which Mr. Sorin could conclude that it did. If there had been such a promise or agreement I would have insisted Ms. Jaroslaw include it in the plea agreement or raised the issue at the time of sentence. Both Mr. Shechtman and I had many conversations with AUSA Jaroslaw about what she intended to do at sentencing and the positions she planned to take. Her answers, which we relayed to Mr. Sorin, informed our recommendations to our client, but we never believed that those answers were unwritten agreements that supplemented the written plea agreement. More importantly, we never told Mr. Sorin that they were.

(Puccio Decl., Ex. 4 (Declaration of James L. Brochin), at ¶ 22; see also id. at ¶¶ 7-8; Puccio Decl., Ex. 5 (Affirmation of Paul Shechtman), at ¶¶ 6, 8.)[3] The view of the parties involved in the plea discussions confirms that no promise was made to Sorin outside the Plea Agreement. Coupled with Sorin's unambiguous representations to the court and the language of the Plea Agreement itself, there is no basis on which to allow further discovery on the matter of plea negotiations.

---

[2] According to AUSA Jaroslaw, a high-level official in the U.S. Attorney's Office who was unfamiliar with the plea negotiations, told Jaroslaw a few days before the original sentencing date that she "must advocate . . . that the only just sentence in this case is a term of incarceration of five years." (Puccio Decl., Ex. 6 (Declaration of Ilene Jaroslaw), at ¶ 13.) It does not appear that AUSA Jaroslaw's intent had been to advocate for such a sentence, and so "through [her] efforts and those of [her] direct supervisors, the high-level supervisor was persuaded that this should not be the government's position at sentencing." (Id.)

[3] Sorin offers a billing entry from an associate of Mr. Brochin indicating that research was performed on oral agreements. (See Def. Mem. 5-6, 7 (citing billing record).) This evidence does nothing to undermine this court's conclusion that no oral promise supplemented the Plea Agreement. The fact that research was performed by an attorney about an oral promise does not mean there was an oral promise, nor does it undermine the unequivocal statements of defense counsel that there was no such promise, nor the unambiguous terms of the Plea Agreement that no other promises were included in the parties' agreement.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for discovery in aid of his motion to vacate (Docket Entry # 84) is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      September 22, 2009

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge