UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

        -against-

JACOB KOBI ALEXANDER, et al.,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**06-CV-3844 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Defendant, David Kreinberg, is the former Chief Financial Officer of Comverse and participated in a scheme to backdate the grant dates of stock options to employees. When the scheme was discovered, he faced both civil and criminal charges. Defendant pleaded guilty and also entered into a civil settlement agreement with the Securities and Exchange Commission (SEC). (Oct. 24, 2013, Settlement Agreement (Dkt. 6).) As part of that agreement, Defendant accepted a lifetime officer and director bar, under which he agreed never again to be an officer or director of a public company. Defendant now moves under Federal Rule of Civil Procedure 60(b)(5)-(6) for the consent judgment to be modified and the bar to be lifted. (Aug. 9, 2013, Mot. to Vacate, (Dkt. 129).) Because he has failed to meet the high standards required to vacate a consent judgment, Defendant's motion is DENIED.[1]

    **I.    BACKGROUND**

        **A. Facts**

    Defendant participated in a long-running backdating scheme from 1998 through around 2002. (Id. at 3.); (Information (Dkt. 40), at 3-4, United States v. Kreinberg, No. 06-CR-704

---

[1] This is the public version of the court's memorandum and order. A sealed memorandum and order makes reference to additional facts in documents previously placed under seal.

(NGG) (E.D.N.Y., Oct. 24, 2006).) Under the scheme, Comverse backdated stock option grants to employees to a date when the stock was trading at a lower price, which allowed it to underreport non-cash compensation expenses and resulted in Comverse filing false financial statements with the SEC. (Information at 5 (explaining the scheme).)

Defendant quickly settled his civil case and agreed to plead guilty to one count of conspiracy to commit securities fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 371 and one count of securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff. (Information at 22-26.) Before and after his settlement and guilty plea, Defendant provided the government with extensive and continued cooperation relating to this case as well as other enforcement actions against Comverse. In light of his cooperation and the fact that he had spent several hours in jail, Defendant was sentenced to time served and a $200 special assessment in his criminal case. (Hoffner Decl., Ex. C, Sentencing Tr. (Dkt. 129), at 18:18-22, 25:14-21.)

Defendant claims that, as a result of the officer and director bar, he has had to forgo numerous employment opportunities. (Aug. 9, 2013, Reply Mem. in Further Supp. of Def.'s Mot. ("Def. Reply") (Dkt. 133), at 6-7.)

### B. Procedural Posture

On September 28, 2006, Defendant entered into a cooperation agreement with the government, and on October 24, 2006, he pleaded guilty to the charges listed above. (Oct. 24, 2013, Minute Entry.) On the same day, the SEC and Defendant settled this civil action, which was pending before the court. (Settlement Agreement.) The court entered final judgment based on the agreement on November 2, 2006. (Dkt. 8.) The judgment included an obey-the-law injunction, disgorgement of $1,769,255.80, payment of $625,661.88 in pre-judgment interest,

2

and an officer and director bar preventing Defendant from holding corporate executive level positions again. (Id.)

On July 15, 2013, Defendant sought leave to move to modify the final judgment pursuant to Federal Rule of Civil Procedure 60(b) in order to remove the ban on serving as a director or officer of a public company. (July 15, 2013, Kreinberg Ltr. (Dkt. 123).) Defendant served his motion to modify final judgment on Plaintiff on July 19, 2013. Plaintiff served its Opposition on August 2, 2013. (Dkt. 132.) Defendant served his reply on Plaintiff and filed the fully-briefed motion on August 9, 2013. (Dkts. 129, 133.)

## II. Legal Standard

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." Gonzalez v. Crosby, 545 U.S. 524, 528 (2005). Defendant seeks relief from the bar under Rule 60(b)(5), on the basis that "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Alternately, he seeks relief under the rule's catchall provision, Rule 60(b)(6), which recognizes "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Subsection 60(b)(6) "permits reopening when the movant shows 'any . . . reason justifying relief from the operation of the judgment' other than the more specific circumstances set out in Rule 60(b)(1)-(5)." Gonzalez, 545 U.S. at 528-29.

Motions for reconsideration of a final judgment are "generally not favored," and are "properly granted only upon a showing of exceptional circumstances." Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)). The party seeking relief has the burden of proving such circumstances. Id.

To obtain relief under the subsections specified, Defendant must show that there is a "material, relevant change in fact or law since the . . . consent injunction," Rule 60(b)(5), or "'extraordinary circumstances' justifying relief," Rule 60(b)(6). Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 222 Fed. App'x 25, 26-27 (2d Cir. 2007) (citing DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994); Schildhaus v. Moe, 335 F.2d 529, 530 (2d Cir.1964)). Although the passage of time can be a factor weighing against relief, Fed. R. Civ. P. 60(c)(1) (Rule 60(b) motion must be made "within a reasonable time . . . ."), it can also alter the equities of the case, justifying resort to Rules 60(b)(5)-(6).

## III. DISCUSSION

Rule 60(b) already creates a high standard for setting aside a judgment. That Defendant wishes to disturb a consent judgment makes this standard even harder to reach. Sampson v. Radio Corp. of Am., 434 F.2d 315, 317 (2d Cir. 1970) ("A motion under Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation or to forego an appeal from an adverse ruling.") Defendant cannot meet this burden because he does not show either that the bar is no longer equitable or that his case involves extraordinary circumstances meriting a revision to the judgment.

### A. Construing a Consent Judgment

Defendant is not seeking to modify a judgment made after trial, but rather a consent judgment. This factor adds weight to the burden that already exists for a party seeking modification under Rule 60. The Supreme Court has held that consent decrees are to be construed "basically as a contract." United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 (1975). Consent decrees covering public issues may sometimes receive a more liberal construction. See Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 378-80 (1992); see also

Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity, 13 F.3d 33, 38 (2d Cir. 1993) (extending Rufo's logic), cert. denied, 315 U.S. 809 (1994). But Defendant is a private party who can be expected to have more, and more accurate, information about the future consequences a lifetime ban from the corporate suite than a public agency might have when trying to predict the effects of a consent decree several administrations hence. Thus, a stricter construction that treats the agreement in a manner similar to a private contract is appropriate. See E.E.O.C. v. Fed. Express Corp., 268 F. Supp. 2d 192, 204 (E.D.N.Y. 2003).

Defendant's early bargain with the SEC not only spared him the time, expense, and potential embarrassment of litigation, but likely aided his plea negotiations as well. For those benefits, he gave up the opportunity to litigate the need for a lifetime ban. See United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994). As a result, Defendant not only bears the typically heavy burden of showing that the consent judgment should be overturned under Rule 60(b), but also the additional weight of demonstrating why a result that he chose is no longer fair.

### B. No Longer Equitable

Defendant does not assert a significant change to securities laws since his settlement, but claims that his cooperation and his lack of further criminal activity over the past seven years constitute new factual circumstances that would justify lifting the ban. (Def. Reply at 2.) There is a disagreement among circuits as to whether the passage of time, alone, can be a sufficient basis for finding that an injunction is no longer equitable under Rule 60(b)(5). Commodity Futures Trading Comm'n v. Kelly, 736 F. Supp. 2d 801, 803 (S.D.N.Y. 2010) (collecting cases). In a similar case, a defendant under an obey-the-law injunction asked to have it lifted, based on his good behavior and the passage of time. The Southern District noted that the Second Circuit

has not dealt with such a situation directly, but that its caselaw suggests the passage of time may be sufficient basis for lifting such an injunction. Id. In Coldicutt, a case cited by both parties, the Ninth Circuit took a somewhat harder line, holding that the passage of time could be a factor favoring lifting the injunction, but was not, in itself, sufficient. See S.E.C. v. Coldicutt, 258 F.3d 939, 943 (9th Cir. 2001) (collecting cases from the Third, Tenth, and D.C. Circuits with similar holdings).

This case is similar to the Kelly case, featuring a remorseful defendant who has conducted himself well, even admirably, since his conviction. In Kelly, the court declined to disturb an obey-the-law injunction in part because it was "an implicit premise" underlying the resolution of the Kelly's criminal case. 736 F. Supp. 2d at 804. Defendant in this case was sentenced to time served and a $200 special assessment. (Sentencing Tr. at 18:18-22, 25:14-21.) The record reflects discussion of his agreement to a lifetime bar from being an officer or director of a public company. (Id. at 12:10-12.)

Like the Southern District in Kelly, the court believes that the benefits of settlement justify leaving the bargain-for terms of the settlement intact. The passage of time is not a sufficient change in factual circumstances to alter the equities in this case.

### C. Other Extraordinary Circumstances

Beyond the options listed in Rule 60(b)(5), there lies the catchall provision in Rule 60(b)(6). Here, too, Defendant appears to rely on seven years of good behavior and his extensive cooperation. Defendant makes vague reference to harm to his career but does not offer any concrete information in this regard. (Def. Reply, at 1.) Although some jobs are not open to him, he does not point to a specific, extraordinary hardship caused by his inability to be employed as an officer or director of a company.

If Defendant had litigated the officer and director bar, the government might not have been able to prove its necessity. The Second Circuit's decision in Patel suggests that the bar on serving as an officer or director is reserved for serious securities law offenders who are likely to commit other crimes. S.E.C. v. Patel, 61 F.3d 137, 141-42 (1995); see also S.E.C. v. Posner, 16 F.3d 520, 521-22 (2d Cir. 1994) (past violations and high degree of scienter merit lifetime ban), cert. denied, 513 U.S. 1077 (1995); S.E.C. v. Drucker, 528 F. Supp. 2d 450, 453-54 (S.D.N.Y. 2007) (defendant's lack of remorse and "cocky" attitude in court suggest a likelihood that he will reoffend if not the subject of a ban) aff'd, 346 Fed. App'x 663 (2d Cir. 2009). Lower courts have continued to follow this guidance. S.E.C. v. iShopNoMarkup.com, Inc., No. 04-CV-4057 (DRH) 2012 WL 716928, at *6 (E.D.N.Y. Mar. 3, 2012); S.E.C. v. Stanard, No. 06-CV-7736 (GEL) 2009 WL 196023, at *33-34 (S.D.N.Y. Jan. 27, 2009) (no bars for first-time offenders).

Despite this possibility, the court sees no reason to disturb the consent judgment. The calculations Defendant faced were similar to those in Bank of New York. In that case, the defendant entered into a civil forfeiture agreement and pled guilty based on his manufacture of crack vials. 14 F.3d at 758. When the Second Circuit later held that the manufacture of these vials was not covered by the criminal statute, his conviction was overturned. Id. When the defendant sought to undo his civil forfeiture, however, the Second Circuit found even the fact that the defendant's criminal conviction had no legal basis insufficient to undo an agreement that the defendant had consented to. Id. at 760 ("A failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6).").

Defendant offers the example of S.E.C. v. Lewis, in which the court lifted an obey-the-law injunction that Lewis had originally consented to. 423 F. Supp. 2d 337 (S.D.N.Y. 2006);

(Def. Reply at 3.) Like Lewis, Defendant asserts that the injunction he agreed to has harmed his career. But Lewis received a presidential pardon, and the court considered the obey-the-law injunction to be a punishment, from which a pardoned defendant should be relieved by virtue of the pardon. Id. at 341. No such circumstance exists here.

Defendant's underlying conviction has not been overturned. Defendant knew, when he agreed to the bar, that he was forfeiting future potential earnings. As a financial professional, he would be aware of the ramifications of such a choice. Having weighed the costs and benefits, he chose the bar over further negotiations or litigation of the issue. See Bank of N.Y., 14 F.3d at 760. And he received not only the benefits of quick settlement of his civil case, but extreme leniency in criminal sentencing as a direct result of his civil settlement. To put the SEC to its proof on the issue of the bar, he might have had to risk greater sanctions. That he miscalculated, if indeed he did, is not a reason to revise his bargain absent the showing of any extraordinary hardship.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to vacate the officer and director bar included in the November 2, 2006, consent judgment is DENIED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
October 21, 2013

NICHOLAS G. GARAUFIS
United States District Judge